UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 2:13-cr-82-FtM-29DNF

GARY WILLIAM MCDEVITT

## PLEA AGREEMENT

A. **Particularized Terms**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Lee Bentley, III, Acting United States Attorney for the Middle District of Florida, and the defendant, Gary William McDevitt, and the attorney for the defendant, Martin DerOvanesian, mutually agree as follows:

1. Count Pleading To

The defendant shall enter a plea of guilty to Count Two of the Indictment. Count Two charges the defendant with Using Threats of Force to Endeavor to Intimidate and Impede a Revenue Officer of the Internal Revenue Service, in violation of Title 26, United States Code, Section 7212(a).

2. Maximum Penalties

Count Two is punishable by a maximum term of imprisonment of 1 year, without parole, a fine of not more than $100,000, a term of supervised release of not more than 1 year, and a special assessment of $25.00, said special assessment to be due on the date of sentencing. With respect to certain offenses, the Court shall order the

defendant to make restitution to any victim of the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3.  Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count Two are:

(1) the Defendant knowingly tried to intimidate or impede an officer or employee of the United States;

(2) the officer or employee of the United States was acting in an official capacity under the Internal Revenue Code, Title 26, United States Code; and

(3) the defendant used threats of force (including any threatening letter or communication).

4.  Counts Dismissed

At the time of sentencing, the remaining count against the defendant, Count One, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.  No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.  Mandatory Restitution to Victims of Offenses of Conviction

Pursuant to 18 U.S.C. §§ 3663A(a) and (b), defendant agrees to make full

restitution to any victim of the offense.

7. Acceptance of Responsibility

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

8. Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

**B. Standard Terms and Conditions**

1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. §

3

3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663 or § 3579, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2.  Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.  Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

4.  Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his/her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he/she has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

5.  Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound

by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

6. <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution;

6

provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

7. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

8. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

9. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel. The defendant also understands that defendant has

7

the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel, defendant's answers may later be used against defendant in a prosecution for perjury or false statement.

10. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt:

## FACTS

On October 2, 2012, defendant Gary William McDevitt threatened the life of Revenue Officer R.F. while speaking on the phone with Community Tax Relief Case (CTR) Manager Michael McAllister, who was not an attorney. McDevitt contacted CTR on October 2, 2012, after his bank account was garnished by the IRS. The following is a transcript of the conversation:

8

MM: Michael McAllister
GM: Gary William McDevitt

    MM: Good morning, Community Tax Relief, Mike McAllister speaking.

    GM: Hey, how are you today?

    MM: Good, how are you?

    GM: Ah..Not too good. I need to speak to somebody. I hired two guys, I have Jeremy, I have Bill, I made phone calls this morning. I had my bank account garnished this morning by an IRS agent that's about an hour from my house. I'm so fucking pissed off, excuse my language.

    MM: Yea

    GM: Something bad is going to happen today unless that money is released. I have no money and I hired you guys and this guy is out of control, the IRS agent.

    MM: Ok

    GM: Uhm..

    MM: Is this Gary McDevitt?

    GM: Yes it is, and I'm telling you brother, I'm telling you straight up, you might be reading about me on the news because if this doesn't get solved, that motherfucker ain't going to be on this earth.

    MM: Ok

    GM: I'm dead serious.

    MM: Na, I got you. Is there any way to get a copy of the levy notice that was sent to the bank?

    GM: I don't know how to do that, quite honestly.

    MM: If you contact the bank they, they will provide you with a copy of the letter. We need a copy of the letter.

    GM: Ok, that's fair enough, I can go to the bank, it's about a mile away.

MM: Ok, yea, if you could, here's what . . . if you can get three things.

GM: Let me just ask you a quick question, I am going to jump to the chase. Can you fix it? If you can't, I will fix it on my own.

MM: We can certainly try. What we need to see is a copy of the letter. Letting um know . . . It will let us know exactly what is going on there. We also need a contact person at the bank and the bank fax number. If we can get a release we can have the IRS fax a levy release over to the bank.

GM: Ok, he has done this once before, before I hired you guys you know what it ain't fun, I am sitting here with no money. I made a deposit yesterday. OK, here's what's going to happen. If you guys help him, I've paid you money, you guys have been great. I have the documents here that I'm working on . . . and I made a deposit yesterday. I'm looking at, I'm looking at my statement right now, it's like he charged $100 to do the garnishment. It's kind of still in my account but it's not, and then $1600 and some dollars. So it's about $1700 1800. If you guys can't solve it, um, you'll be reading about me on the news.

MM: Ok. Well we don't want that.

GM: I'm dead serious, I've had enough.

MM: Okay, we certainly don't want that.

GM: Well, I've had enough.

MM: Right, I got you, I understand your frustration, believe me, but there's a couple of things we need to do in order to attempt to address it here. We need a copy of the letter that was sent to your bank. We need a bank fax number and some sort of contact person there.

GM: Ok, bank fax . . . number.

MM: Bank . . . fax, uh a contact person at the bank.

GM: Well the branch manager is a guy by the name of Peter.

MM: Ok, good. If you could just get yeah like his phone number or something and then just a copy of that letter.

GM: I don't know, what the letter . . . How do I get a copy of the letter?

MM: You should go in, what happens is when they levy your bank account,

10

they send a letter to the bank letting them know . . . say, hypothetically, you owe them $20,000. They let them know Mr X owes, has back taxes of $20,000 so we want everything in his account up to that amount. So if you have $400 in your account, they take the 400 bucks and they hold it for 21 days. It's frozen for 21 days and in that period you have a chance to like appeal it to get it back and it's held for 21 days and then it's sent to the IRS. So what we need is a copy of that letter to make sure it was your revenue officer who sent it and then we can . . . .

GM: It was, it was. Cause I looked it up and it said, you know, on my bank website. I don't know how to do this dude, I'm only gonna operate today. That motherfucker is a dead man.

MM: Gotcha.

GM: I will . . . he's a fucking dead man. He's fucking dead. That's where I'm at.

MM: Ok.

GM: I don't have a lawyer, I don't know how to get a letter.

MM: All you have to do is go into the bank, and request it and they will provide it for you.

GM: Ok.

MM: Um, so just get . . . you know, go and say hey, you know, by the looks of it, I think my bank account was levied. I'd like a copy of the letter to provide for my legal representation. I also need your fax number so they can attempt to have a levy lift faxed over to you, and someone to contact once they do so.

GM: Can we do this soon?

MM: Yes as soon as you get us a copy of the letter we can, we'll start working on it.

GM: OK, because that fucker is a dead fucking man. I'm telling you straight. I don't care if he calls the fucking God damn FBI, the CIA, that motherfucker is uh one fucking hour from me and I met with him. That's why I hired you guys. He's a fucking dead man.

MM: Ok. Well, allow us to attempt to deal with it first before anything else. You know, that's what we are here for. Let's, let's take this in steps here, and first let's just go ahead and get a copy of the letter from the bank.

GM: Ok . . .

MM: That's step one. Let's, let's, let's deal with that first and then see where we need to go from there.

GM: If I don't get the money back today, that motherfucker's gonna die. That's all I can tell you. So good luck with it, because, I, I, I, I'm done.

MM: OK. I, I, I hear you. Um, do you have our fax number, is there any way you would be able to fax us a copy of the letter once you get it or, can you email it to us?

GM: Yeah, I can fax it to you.

MM: Ok. Do you have our fax number? I'd be happy to give it to you.

GM: You can give it to me.

MM: Ok. Uh, do you have a pen handy?

GM: Yes, I do.

MM: Ok, it's area code 888.

GM: Yuh . . .

MM: 616 8850, and just put attention Bo on it.

GM: Bo?

MM: Yeah, that's fine.

GM: OK, hold on, 888-616-8850, attention Bo.

MM: Yes. And then just give him a call once . . . Do you have his direct telephone number? I can give that, too. Ok, his direct telephone number is, is, um, 773.

GM: Who's this?

MM: That's Bo, he's your case manager.

GM: Ok.

MM: It's ah, 773 577

GM: Yeah.

MM: 2945.

GM: 2945.

MM: Yeah, once you fax it just give him a call. Say "Hey Bo, you know, I got a copy of the letter we need for the bank levy. I faxed it over to you. It's coming from a 239 area code or whatever the case may be so he can get his hands on it right away.

GM: Ok and we can solve this problem?

MM: We're certainly going to take a crack at it. We need to see exactly what we got going on with the letter. We can contact the rev . . . there are steps we can take, but I want to get this rolling as quickly as we possibly can here, so . . .

GM: If by 5:00 I don't have my money, I can't pay my rent, my car payment . . . I got payments to make. If I don't have it, that motherfucker is gonna fucking die today. That is my God honest problem. He's a dead man. I know where he is.

MM: I got you. Before, before we go there, before, you know, anything like that happens, allow us the opportunity to see what we can do here. Yeah, you know, we can, we can work on your behalf on this and see what we got going on.

GM: Ok, I got you.

MM: Alright

GM: Yup, thank you.

MM: Alright, no problem. Bye Bye.

CTR's telephone records revealed that on October 2, 2012, the company received numerous calls from telephone number 239-410-1903 and that a number of the calls were recorded.

AT&T records revealed telephone number 239-410-1903 is assigned to McDevitt and that the account was still active. On October 2, 2012, the telephone

13

number assigned to McDevitt was used to make numerous telephone calls to 773-577-2945 and 877-971-3232 which were phone numbers for CTR.

Revenue Officer R.F. was assigned a collection case involving McDevitt in February 2012. The IRS alleges that McDevitt had delinquent personal tax returns for numerous years and due to the delinquent returns, alleges that he had an outstanding tax liability. On September 25, 2012, R.F. levied McDevitt's bank account with Sun Trust Bank in an attempt to collect funds to apply towards his tax liability.

On October 3, 2012, Gary McDevitt was interviewed by Special Agents of the Treasury Inspector General Tax Administration. McDevitt admitted that during a telephone conversation with a CTR representative about an IRS issue, he threatened to kill the IRS employee assigned his collection case. McDevitt admitted his collection case is assigned to Revenue Officer R.F. McDevitt advised he made the threatening statement to the CTR representative because he was upset that R.F. levied one of his bank accounts which kept him from being able to access the funds needed to pay his bills. McDevitt said he was extremely angry with the IRS because they keep telling him that their records showed that he has not filed tax returns for the past 10 years.

11. <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

14

12. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 25TH day of November, 2013.

_____
GARY WILLIAM MCDEVITT
Defendant

_____
MARTIN DEROVANESIAN
Attorney for Defendant

A. LEE BENTLEY, III
Acting United States Attorney

By: _____
JEFFREY F. MICHELLAND
Assistant United States Attorney
Trial Counsel

By: _____
NICOLE H. WAID
Assistant United States Attorney
Chief, Fort Myers Division

15